**UNITED STATES of America**

**v.**

**William H. HOWARD, Appellant.**

**No. 71–2000.**

United States Court of Appeals, District of Columbia Circuit.

Oct. 10, 1972.

Mr. Morris J. Levin, Washington, D. C. (appointed by this Court), was on the brief for appellant.

Mr. Harold H. Titus, Jr., U. S. Atty., was on the brief for appellee. Messrs. John A. Terry, Vincent R. Alto, and Ruth R. Banks, Asst. U. S. Attys., were also on the brief for appellee.

Before McGOWAN, LEVENTHAL and MacKINNON, Circuit Judges.

9.  Under either test noted in fn. 9 of our prior opinion.

**PER CURIAM:**

Appellant Howard was convicted of armed robbery and felony murder. The court adjudged a sentence on the felony murder count of twenty years to life and on the armed robbery conviction of five to twenty years. The sentence provided that the terms of imprisonment were to run concurrently with each other.

Appellant's brief states the question presented on this appeal to be:

> Did the trial court err in failing to suppress the defendant's alleged confession where it was uncontroverted that defendant had made known his wish and intention to consult with an attorney, but the Government had, nevertheless, continued to interrogate the defendant in the absence of an attorney, and elicited a confession prior to making an attorney available to defendant?[1]

The difficulty with this formulation of the issue is that the Government's evidence, both at the suppression hearing and at the trial, did controvert the claim that appellant "made known his wish to consult with an attorney."

At the suppression hearing the Government introduced testimony from police officers to the effect that after appellant was duly advised of his rights a number of times (it is admitted that he was duly advised of his rights by police officers and by the magistrate), he initially indicated he was *undecided* whether he should talk to the police officers or whether he should wait until he had an attorney: ". . . whether he should get an attorney there in Raleigh or wait until he came back to Washington, D. C." (H. 60, 72–73, 77–78).[2] Being undecided about getting a lawyer is substan-

tially different from making a request for an attorney. The police state they replied to Howard's statement of indecision by saying it was up to appellant and they then informed him that they "had obtained statements from Keith Glover, Cooley and Cal [Calhoun]" (H. 61).[3]

> At that time, he told us he wanted to tell us what he knew about it. (H. 61).[4]

The police then took down a typewritten confession which appellant read over, made corrections in the draft statement, and then initialled and signed it (H. 62–64, 70–72).

There is thus no question that the testimony of the Government did controvert appellant's claim that appellant "made known his wish and intention to consult with an attorney" by introducing testimony that he indicated he was "undecided" about an attorney and then going forward to give a voluntary statement.

We do not overlook the testimony of Howard at the pretrial suppression hearing in which he testified[5] he asked for an attorney (H. 95). He further testified that he was told maybe the policemen could answer his questions and that if he insisted on a lawyer before he made a statement that it would probably delay the matter as much as four months (H. 96).

We also note that appellant on cross-examination freely admitted that he was duly advised of his rights and "understood them" (H. 98, 103): of his right to an attorney, that if he could not afford an attorney the police "would make sure one would be appointed for [him]," that he did not "have to answer any

---

1. The confession was taken in an interview room of the police department at Raleigh, North Carolina, by two detectives from the District of Columbia police department. A member of the Raleigh police force was present throughout.

2. The reference (H. ——) indicates transcript from the suppression hearing.

3. Cooley and Calhoun were co-defendants (H. 3).

4. This was the testimony of the police officer.

5. Appellant did not take the stand at trial.

**408**

question, if [he] wanted to answer some question [he] could stop answering any time," and that "nobody mistreated" him (H. 99, 102). He also admitted that he had been promptly taken before the magistrate, that the magistrate had advised him of his rights, including his "right to an attorney" and that at that time in writing he had waived his right to any attorney (H. 99–100).

The factual situation surrounding the taking of the confession is well presented by the following extract from Howard's cross-examination:

Q   You knew you had a right to a lawyer?

A   Yes, I knew I had a right.

Q   You knew you didn't have to say a word without a lawyer?

A   Yes.

Q   And you knew they wouldn't beat anything out of you, is that correct? You didn't fear that, did you?

A   Being beaten?

Q   Beat you up to get a confession out of you?

A   No, I didn't fear that.

Q   You had no worry about that at all?

A   Not about being beaten.

Q   But you gave a statement anyway without a lawyer?

A   Yes, I did. (H. 105).

It is perfectly clear that the confession was not forced and appellant does not so contend.

As for the conflict in the testimony, that was clearly for the trial judge to adjudge and he resolved it in favor of the Government as follows:

THE COURT: Well, I am not going to suppress any of these statements. The Court is inclined to feel that the officers have proceeded with proper regard for the rights of the individuals involved. The only case that presents any problem to the Court at all is the case of Howard, and *in the instance of Howard, I do not fully accept his testimony, in view of the fact that in the light of the testimony of the officers, I believe what happened is that Mr. Howard ruminated about whether or not perhaps he ought to have a lawyer, he decided to go ahead and get it over with, and give his statement.* His whole performance with respect to initialing and the handling of the statement, and the manner in which the statement runs, which you can see is a freely running confession, and not a forced confession in any way, leads the Court to feel that in the absence of any oppressiveness—and I find none in this case—that he, whatever his earlier comments may have been, determined that he would get it over with and give a statement, when he learned that others who were involved with him in the offense had given statements. I do not believe that it violates any legal requirement to tell a man that other statements have been given, if in fact those statements have been given. Where that device is used when no statements have been given, I think a wholly different problem exists; but in this instance, statements had been given and the statements of the officers with respect to that are genuine. (Emphasis added, H. 110–111).

Since credibility is involved we recognize the superior position of the trial judge to determine where the truth lies. His remarks also clearly set forth the basis for his determination. It is universally recognized that his opportunity to see and hear the witnesses places him in a preferential position to weigh in-court testimony. We also note that Howard was 23 years of age at the time of the interrogation, that he had served 2 years in the United States Marine Corps, being detailed to electronics communications, and that in connection with

a court-martial there he had been represented by assigned counsel (H. 100–101). Lawyers were not something new to him.

Appellant contends that the Government brief, which deals with the propriety of admitting the confession, goes beyond the suppression hearing and cites testimony at the trial which he claims is stronger in favor of the Government. He contends that the Government's reference to trial testimony to support the court's ruling is improper, while the ultimate decision to overrule appellant's objection to the admission of the confession was made at the trial (Tr. 61–62). On this appeal we have made our determination of the issue on the basis of the evidence that was presented at the suppression hearing and we find that it adequately supports the decision of the trial court.

Affirmed.

LEVENTHAL, Circuit Judge (concurring):

I think this case is not without difficulty. It was, however, established at the suppression hearing that appellant was advised of his rights—to remain silent, and to have counsel assigned before making any statement—not only by the police in Raleigh, N.C., who arrested him, but also by a magistrate in Raleigh. The rights were reiterated by the District police officers, Detectives Manning and Girault, who were in plain clothes, and who interviewed him after he waived extradition. Detective William Manning, who conducted most of the interview, testified that defendant "said that he didn't know whether he should wait until he had an attorney." "He said that he didn't know whether he should get an attorney there in Raleigh or wait until he came back to Washington, D. C." Detective Manning replied that this was his prerogative, and "If he wanted a lawyer, we would try to get a lawyer." Defendant inquired how soon

it would be before he got back to D. C. Detective Manning couldn't say. (H. 67). Detective Manning told defendant the police had obtained statements from three others, and defendant "seemed apprehensive at that point." Detective Manning showed defendant the title page and signatures, (but not the contents) of the three statements, then read him the arrest warrant, and: "At that time, he told us he wanted to tell us what he knew about it." (H. 61). The statement was taken down at a typewriter in question and answer form.

Detective Manning was asked, on cross-examination:

"Q. Did he ever ask at any time that anyone present provide him with an attorney.

A. No he did not." (H. 67).

After Detective Jack Girault was questioned by the prosecutor as to the statement, and defendant's corrections thereon, the Court asked (Tr. 72):

THE COURT: Officer, during the entire time that he was there, after he was brought up from the jail, what if anything did this man say about a lawyer?

THE WITNESS: He at one time stated something about he didn't know whether he should get a lawyer down there in North Carolina or wait until he came back to the District. We advised him that we couldn't make the decision for him, that he would have to make the decision as to whether he wanted a lawyer there or here himself. If he wanted one there, we would make arrangements to get one for him.

THE COURT: And I take it he never asked for a lawyer?

THE WITNESS: Not after that, not after making that initial statement of whether he should get one there or up here, no sir.

A fair reading of this testimony reveals that this is a case where in the

first instance defendant did make known his desire to consult an attorney—the only question being where, in Raleigh or Washington. Then Detective Manning moved forward with the information about the confessions of the others, showed their signatures, and read the arrest warrant. As the Government brief says: "The turning point apparently came when appellant saw the other confessions." (Typed Br. 6).

In *Miranda*, the Supreme Court says that unless other fully effective means are devised to inform accused persons of their right to silence, the law enforcement officers prior to questioning must advise him of his rights to remain silent and to the presence of an attorney. The defendant may make a voluntary, intelligent and knowing waiver of his rights. "If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning."

Since defendant did indicate he wanted an attorney, one place or the other, was he also required to say expressly he wanted an attorney before speaking in Raleigh? Under *Miranda* a man who says he wants an attorney can't be questioned. I have some difficulty with pursuing a man who says he wants an attorney through the means of advising him of the confessions of others, in the hope that he might be led, as he was in this case, to say he wanted to tell what he knew, and respond to questions.

In this case what leads me in the last analysis to concur in the result is the fact that defendant had been advised of his right to counsel not only by a law enforcement officer, but also by a judicial officer. In the context of a judicial warning, and defendant's background and experience, I think the facts sufficiently establish a voluntary, knowing, and intelligent waiver of his rights. And I have no doubt that the confession was voluntary.