545 P.2d 986

**The STATE of Arizona, Appellee,**

v.

**Charles Fredric TRAVIS, Appellant.**

**No. 2 CA–CR 703.**

Court of Appeals of Arizona, Division 2.

Jan. 27, 1976.

Rehearing Denied March 4, 1976. Review Denied March 23, 1976.

Bruce E. Babbitt, Atty. Gen., by Heather A. Sigworth, Asst. Atty. Gen., Tucson, for appellee.

John M. Neis, Pima County Public Defender, by Kenneth J. Peasley, Asst. Public Defender, Tucson, for appellant.

**26**

## OPINION

HOWARD, Chief Judge.

Charles Travis was found guilty of second degree murder and was sentenced to serve not less than ten nor more than twelve years in the Arizona State Prison. He raises six issues on appeal; three concern the giving, or refusing to give, certain instructions, two concern conduct of the prosecutor and the last deals with the admissibility of certain evidence claimed to have been gathered in violation of *Miranda. v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We find no reversible error and therefore affirm.

The undisputed facts are that after some drinking and quarrelling throughout the night of March 16 and the morning of March 17, 1975, appellant shot and killed his wife. The defense consisted of the alternative theories of self-defense, heat of passion, and intoxication sufficient to negate specific intent and hence reduce murder to manslaughter. The jury returned a verdict of second degree murder apparently finding that the shooting was not premeditated but rejecting appellant's contention that he was so intoxicated that he could not have formed the specific intent required to have committed murder.

■ In spite of the fact that the trial court instructed the jury on all degrees of homicide including voluntary and involuntary manslaughter, on the effect of intoxication on specific intent, and on self-defense, appellant nevertheless complains that the court failed to qualify the malice instruction by pointing out to the jury that malice can be inferred from the use of a deadly weapon only in the absence of mitigation, justification, or excuse. Appellant cites *State v. Brock,* 101 Ariz. 168, 172, 416 P.2d 601, 605 (1966) in support of his contention. The court in *Brock,* indeed said that "The instruction on second degree murder must include the element of malice, . . . and exclude circumstances of mitigation, justification or excuse." (citations omitted). This language, how-

ever, refers to the necessity of instructing on lesser offenses if the evidence tends to show that a defendant may be guilty of an offense less severe than the crime charged. Here appellant received all of the instructions on mitigation, justification and excuse to which he was entitled.

■ Appellant contends nevertheless that there is some similarity between permitting the jury to infer malice from the use of a deadly weapon and requiring a defendant to prove that he acted in the heat of passion or on sudden provocation to reduce murder to manslaughter, the latter having recently been held to violate the Due Process Clause of ᵗthe Fourteenth Amendment in *Mullaney v. Wilbur,* 421 U. S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). We fail to see the similarity. *Mullaney* merely holds that ". . . when the issue is properly presented, . . . ." ". . . the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation . . . ." 421 U.S. at 704, 95 S.Ct. at 1892, 44 L.Ed.2d at 522. *Mullaney* deals with the law of Maine which, until the United States Supreme Court decided the case, conclusively presumed malice from the fact of an unlawful killing. The burden was upon the defendant to prove the mitigating factor of heat of passion upon sudden provocation. This has never been the law in Arizona. In this state, the prosecution is required to prove malice beyond a reasonable doubt. *Moore v. State,* 65 Ariz. 70, 76, 174 P.2d 282 (1946). The mere fact that malice may be proven by circumstantial evidence, in this case by among other things an inference to be drawn from the use of a deadly weapon, does not shift the burden to the defendant to prove its absence. The United States Supreme Court itself stated in *Mullaney,* 421 U.S. at 702, 95 S.Ct. at 1891, 44 L.Ed.2d at 521:

". . . proving that the defendant did not act in the heat of passion on sudden provocation is similar to proving any other element of intent; it may be estab-

lished by adducing evidence of the factual circumstances surrounding the commission of the homicide. . . ."

■ Appellant's second contention is that the trial court erred in giving an instruction concerning the inference to be drawn from contradictory statements of the accused. Although our Supreme Court has recently approved of this instruction in *State v. Kountz*, 108 Ariz. 459, 501 P.2d 931 (1972), appellant nevertheless contends that in the more recent case of *State v. Settle*, 111 Ariz. 394, 531 P.2d 151 (1975), the Court retracted from this position. We do not agree. The instruction disapproved of in *Settle* cautioned the jury to weigh the testimony of the prosecutrix in a rape case with particular care. The reason this was held to violate Article 6 Sec. 27 of the Arizona Constitution is that it amounted to a personal opinion of the judge. Such is not the case here. The inference to be drawn from contradictory testimony, as the inference to be drawn from the use of a deadly weapon, is permissive and is based upon the jury's finding of fact. No personal opinion of the trial judge is involved.

■ As with the inference of malice, the inference of untruthfulness does not shift the burden of proof to the defendant and hence involves no due process issue.

■ Appellant's next contention is that the trial court erred in refusing his requested instruction concerning the unfavorable inference to be drawn from a police officer's destruction of his notes after incorporating their substance into his official police report. We find no error in refusing this instruction for the reason that the notes, unlike the dynamite destroyed in *State v. Willits*, 96 Ariz. 184, 393 P.2d 274 (1964) were not "evidence whose nature, quality, or description [were] at issue in the case," as the language of the requested instruction indicates. Furthermore, Rule 15.4, Rules of Criminal Procedure, 17 A. R.S., specifically covers a situation such as this. Subsection (a)(2) of the Rule pro-

vides "Handwritten notes which have been substantially incorporated into a statement shall no longer themselves be considered a statement." The Comment to the Rule explains:

> "The exception for superseded notes in Rule 15.4(a)(2) is added as a protection for the attorney and law enforcement officer to alleviate the bookkeeping problem of retaining every scrap of notes taken in a case, and to prevent cross-examination on 'jottings' contained in a notebook. . . ."

The notes taken by the police officer in this case were irrelevant once their substance was incorporated into the police report and the court therefore properly refused the requested instruction.

■ Next appellant contends that a comment by the prosecutor to the effect that appellant told the police officer one thing then testified to something else on the stand was grounds for a mistrial. We do not agree. It is true that an attorney ought not for ethical as well as legal reasons to intimate to a jury that opposing counsel has fabricated a defense. See Rule 29(a), DR 7–106(C)(2), Rules of the Supreme Court, 17A, A.R.S.; *People v. Bain*, 5 Cal.3d 839, 97 Cal.Rptr. 684, 489 P.2d 564 (1971).

■ Whether or not improper argument constitutes grounds for a mistrial however, is a matter for the trial court's discretion the exercise of which will not be reviewed on appeal unless there is "invective so palpably improper that it is clearly injurious." *State v. Scott*, 24 Ariz.App. 203, 537 P.2d 40, 43 (1975); *State v. Adams*, 1 Ariz.App. 153, 155, 400 P.2d 360 (1965). The prosecutor made the following comment:

> ". . . I can only go by . . . what the Defendant told us right here after it occurred, after he had a chance to consult with his attorney, before he got a chance to see the charge against him and charge up a defense in the case."

**28**

We do not consider this comment to be "invective so palpably improper that it is clearly injurious" and therefore find no abuse of discretion.

■ Next appellant contends that the prosecutor's calling of a rebuttal witness after the court granted a motion in limine to preclude her testimony was improper. The only record available of what transpired when the prosecutor called her is a request by defense counsel to approach the bench followed by an off the record discussion. We are unable to determine the reason she was called, the reason defense counsel asked to approach the bench, or the ruling of the trial court. There being no record for our review on this issue, appellant is precluded from asserting error.

Appellant's final argument concerns the voluntariness of his statement to detective Marmion. When uniformed officers arrived on the scene of the shooting, one of the officers examined the victim and asked appellant if he was hurt. The officer testified that appellant said "he wasn't, but that he had thought he had shot his wife." Appellant was then read the *Miranda* warnings from the department-issued rights card. He stated that he understood his rights and when asked if he would answer questions, he responded that he thought he might want an attorney. The uniformed officers then ceased conversing with appellant. He was transported to the detective division of the Tucson Police Department.

Detective Marmion interviewed appellant at the police station. Prior to beginning the interview, he asked appellant is he had been advised of his rights and appellant indicated that he had. Appellant also stated that he was a little nervous and did not know if he wanted an attorney. Detective Marmion then uncuffed him, told him to relax, offered him a cigarette, and re-read the *Miranda* warnings.

Appellant stated that even if he wanted an attorney he couldn't afford one.. Detective Marmion then explained each section of the rights card in detail including the section concerning appointment of counsel if appellant could not afford to hire private counsel. Detective Marmion then explained to appellant that if he wanted an attorney he couldn't be questioned further. Appellant indicated that he understood this.

The detective then asked appellant if he would submit to a breathalyzer test and permit the interview to be recorded. Appellant responded in the negative indicating that he wanted to seek the advice of counsel before granting either request. Detective Marmion then advised appellant that his wife had died and that he was being charged with first degree murder. Appellant cried for a short period then indicated that he would answer questions.

Appellant claims the statements which followed were involuntarily given. He relies heavily upon language from *Miranda v. Arizona,* supra, to the effect that "if the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. . . . If the individual states that he wants an attorney, the interrogation must cease until an attorney is present." 384 U.S. at 473–474, 86 S.Ct. at 1627. Appellant states in his brief:

"Since the appellant had initially requested the presence of an attorney, any statements made by him subsequent thereto must be suppressed unless the prosecution demonstrates that appellant knowingly, intelligently, and voluntarily waived the rights to which he was entitled under the case of *Miranda v. Arizona, supra.*"

■ Appellant seeks to bolster his involuntariness argument by contending that his state of intoxication precluded the possibility of his having given a competent waiver. This, of course, is a factual question which the court resolved against appellant at the suppression hearing, which resolution we will not disturb when supported by substantial evidence. *State v. Mumbaugh,* 107 Ariz. 589, 491 P.2d 443

(1971). We find substantial evidence to support the trial court's conclusion.

On the *Miranda* issue, we note that the United States Supreme Court has recently reviewed the very language of the *Miranda* opinion relied upon by appellant in *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313, (1975), concluding that ". . . neither this passage nor any other passage in the *Miranda* opinion can sensibly be read to create a *per se* proscription of indefinite duration upon any further questioning by any police officer on any subject, once the person in custody has indicated a desire to remain silent." 96 S.Ct. at 326.

The facts here are somewhat different from those in *Mosley*, because Mosley was given his full *Miranda* warnings, questioned for a period of time by one detective, indicated a desire that questioning cease which was honored, then was questioned later by another detective about another crime, again after being given his full *Miranda* warnings. In this case, the subsequent questioning concerned the same crime as the initial questioning although the similarities outnumber the differences, i. e., the initial questioning was discontinued after appellant indicated a desire to consult with counsel, there was some time between the initial and subsequent questioning, and the subsequent questioning was done by someone else.

It is our opinion that *Miranda* was complied with here. We rely upon the language in *Mosley* that *Miranda* does not create a per se proscription of indefinite duration, to hold that appellant's statement to the uniformed officers at the scene that he wished to consult with counsel, did not prohibit further questioning by Detective Marmion preceded by the appropriate warnings. Had appellant renewed his request to speak to counsel before answering further questions concerning the shooting, *Miranda* would have prohibited the use of any further statement made at that time. We do not, however, view appellant's statement that he might want an attorney or that he wanted to consult with an attorney prior to permitting a breathalyzer test or a taped interview to be sufficient to have required cessation of further questioning.

We note a very prominent distinction between this case and *State v. Edwards*, 111 Ariz. 357, 529 P.2d 1174 (1974) relied upon by appellant. In *Edwards*, the defendant's request to consult with counsel was all but ignored and interrogation was continued while alleged attempts were made by the police to contact her attorney. Here questioning ceased immediately upon the request being made to the uniformed officers and the *Miranda* warnings were explained in detail by the detective after appellant's indication that he might want an attorney but was not sure he could afford one. The defendant's repeated requests to consult with an attorney were ignored in *Edwards* while interrogation continued for several hours through the night and into the morning. Here the entire interrogation lasted approximately one hour. When Edwards finally consulted with her attorney and was advised not to talk to the police and she relayed this information to her interrogators, they continued to question her. Here appellant never made a definite statement to the effect that he either wanted to talk to an attorney before answering questions or he preferred that questioning cease. In addition, Detective Marmion advised appellant that if he indeed wished to have counsel, questioning would cease. In spite of this lengthy explanation of his rights, appellant nevertheless chose to make a statement. We fail to see how that statement was anything but voluntarily given.

The judgment and sentence are affirmed.

KRUCKER and HATHAWAY, JJ., concurring.