572 P.2d 1183

**STATE of Arizona, Appellee,**

v.

**Manuel Chiquete SOTO, Appellant.**

**No. 3751.**

Supreme Court of Arizona,
En Banc.

Nov. 29, 1977.

Rehearing Denied Jan. 4, 1978.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III and R. Wayne Ford, Asst. Attys. Gen., Phoenix, for appellee.

Albert R. Gamble, Gale A. Dean, Tucson, for appellant.

HAYS, Justice.

Manuel Chiquete Soto, hereinafter appellant, was convicted by a jury of murder,

first degree, armed robbery and armed burglary. He was sentenced to life imprisonment without possibility of parole for 25 years on the murder conviction. Concurrently, he was sentenced to 5 to 10 years on each of the other counts. From these convictions and sentences he appeals. We have jurisdiction pursuant to A.R.S. §§ 13–1711 and 12–120.21(A)(1).

The indictments herein resulted from an armed robbery of a bar in Tucson, during the course of which the owner-bartender collapsed and died of a heart attack. The state proceeded on the theory of felony murder. It was also the state's theory that appellant's active part in the robbery was as the planner, as well as lookout at the crime scene, for the four others involved. To prove its case, the state granted immunity to one of the coperpetrators, Cleveland Reed, who testified to that effect.

Indicted with appellant were two others, but their trials were severed. Appellant and the others were originally indicted January 23, 1976. In March, 1976, one of the codefendants moved for a redetermination of probable cause, and appellant joined the motion. It was granted, but before it could be redetermined, the state obtained a stay of all further proceedings in the lower courts from the Court of Appeals. The stay was obtained, in an ex parte order, to enable the state to appeal the Superior Court's order quashing the indictment [pursuant to A.R.S. § 13–1712(1)].[1]

An opinion affirming the Superior Court's action issued from the Court of Appeals in May, 1976. From March to May, appellant remained in jail. No notice was filed in his behalf, pursuant to 17 A.R.S. Rules of Criminal Procedure, rule 8.1(d), although one was filed on behalf of a codefendant, and no motion to dismiss was ever made to the Superior Court during this period, although, again, the same codefendant did make one.

Appellant alleges in his brief that a motion was made to the Court of Appeals, "to quash its stay order alleging that his right to a speedy trial was in jeopardy." We have no record before us of such a motion.

Appellant further alleges that he filed a special action in this court in April, 1976 and "complained therein that the State was delaying his trial." This court denied that petition, but our own records[2] show that it was based, not on speedy trial notions, but on the invalidity of state appeals and the granting of ex parte orders in criminal matters.

After the Court of Appeals opinion issued, the matter was, in fact, remanded for a new determination of probable cause. A new indictment came down July 30, 1976. In September, 1976 appellant moved to dismiss, pursuant to 17 A.R.S. Rules of Criminal Procedure, rule 8. The motion was supported by affidavits signed by appellant's siblings and mother, recounting the upset and anxiety the delays in the judicial process had caused them. The motion was denied.

The appellant's trial commenced October 26, 1976.

Four issues are raised on appeal:

1. Was appellant's Sixth Amendment right to a speedy trial abridged?
2. Was appellant's right to a speedy trial, pursuant to 17 A.R.S. Rules of Criminal Procedure, rule 8, abridged?
3. Was it reversible error to allow the state to cross-examine and impeach its own witness?
4. Were the proceedings involving the cross-examination and impeachment of the state's own witness so unfair as to deny appellant a fair trial?

## SIXTH AMENDMENT CLAIM

Appellant alleges he was denied his constitutional right to a speedy trial by the

---

1. It is unnecessary to comment herein on the propriety of the Court of Appeals issuing stays of trials in order to allow the state to appeal a trial court order. Suffice it to say that that issue is not presently before us.

2. Again, appellant failed to incorporate the records which he alleges shows his actions.

lengthy period of time he spent in jail awaiting trial. Appellant was jailed from January 19, 1976 until his trial on October 26, 1976, some 282 days.

■ The constitutional right to a speedy trial is triggered by either formal indictment, information or actual restraint of arrest. *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Clearly, appellant's right to a speedy trial jelled on January 19, 1976, when he was arrested and incarcerated.

■ In order to determine whether that right was abridged, however, we begin with four factors enunciated in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972):

(1) the length of the delay;

(2) the reasons for the delay;

(3) the defendant's assertion of the right; and

(4) the prejudice caused the defendant.

*See also State v. Parker*, 116 Ariz. 3, 567 P.2d 319 (1977). Of these four factors, the first is least conclusive and the last most important. *State v. Parker, supra; Barker v. Wingo, supra.* Although we are most concerned with prejudice in preparing for and conducting the defense, that is not the sole item to be considered under the prejudice factor. *Moore v. Arizona*, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973). Others have been outlined by the United States Supreme Court: interference with liberty, disruption of employment, draining of financial resources, curtailment of association, public obloquy, and anxiety in defendant, his family and friends. *United States v. Marion*, 404 U.S. at 320, 92 S.Ct. at 463.

■ Examining all these factors, we conclude that appellant's Sixth Amendment right to a speedy trial was not violated. The length of delay was approximately nine months, a time not so long as to cause prejudice per se, although sufficient to trigger further examination of the other factors.

The reason for the delay was to enable the state to appeal an unfavorable ruling by the trial court, a reason, again, not per se illegal, as such an appeal is authorized by law. A.R.S. § 13–1712.

Although appellant alleges he diligently asserted his right throughout the proceedings, the record before us belies that assertion. There is no record of the motion to vacate the stay order in the Court of Appeals, and the special action in this court was for relief other than a speedy trial. No motion to dismiss in the Superior Court was ever filed in the interim.

Finally, and most importantly, appellant's only claims to prejudice are the anxiety caused his siblings and mother and interference with his liberty. Appellant was unemployed when arrested, with no outlook for future employment alleged; he was represented by appointed counsel, and he does not allege he contributed in any way to his family's finances, and, from the record and appellant's own testimony about his associates and companions, public condemnation was the least of appellant's concerns. Last, but most importantly, appellant does not even allege his defense was in any way impaired by the delay.

We do not denigrate the importance of a defendant, and his family's anxiety in awaiting trial, nor the loss of precious liberty often sustained. In this case, however, they are not sufficiently prejudicial to require reversal.

### SPEEDY TRIAL, RULE 8

■ Appellant was reindicted on July 30, 1976, and tried October 26, 1976. A new indictment gives rise to new limits under rule 8 of 17 A.R.S. Rules of Criminal Procedure. *State ex rel. Berger v. Superior Court, In and For the County of Maricopa*, 111 Ariz. 524, 534 P.2d 266 (1975). Under the above-enumerated facts and law, there was obviously no violation of rule 8.2(b).

### CROSS–EXAMINATION AND IM-PEACHMENT OF STATE'S OWN WITNESS AND BASIC UNFAIRNESS SURROUNDING IT

■ In order to strengthen the state's theory that appellant was not only a look-

out in this crime, but really the ringleader as well, the state called a Larry Washington to testify. It was expected that Washington would testify, as he had given police a statement to this effect, that appellant had approached him and tried to enlist him in the execution of the robbery. Washington allegedly rejected the offer.

Once on the witness stand, however, Washington adamantly refused to answer any questions with regard to the statement, repeating only, "I've got nothing to say." Without approaching the bench and requesting the right to do so, the prosecutor immediately launched into a series of questions which not only were leading in nature, but impeaching as well. Objections, somewhat belatedly, were registered by appellant. Eventually, the trial judge declared the witness hostile and allowed the cross-examination and impeachment to continue. It culminated in a remark by the witness that he had made the statement only to clear himself of the crime, had wanted only to be left alone and do his time (Washington was in the Arizona State Prison on unrelated charges) and that he was scared of appellant. The court also found the witness in contempt one time, in front of the jury, for refusing to answer the prosecutor's questions.

It was the law in Arizona at the time of this trial [3] that a party could impeach its own witness only if the witness' statements 1) surprised the examiner, 2) were material, and 3) damaged the examiner's case. *State v. Ulin*, 113 Ariz. 141, 548 P.2d 19 (1976). These prerequisites were not eliminated by *State v. Skinner*, 110 Ariz. 135, 515 P.2d 880 (1973), which merely changed the use to which impeachment evidence might be put. It may now be used substantively in Arizona. *Skinner, supra.*

Without so much as a claim to surprise, nor a showing that Washington's testimony was material to, and lack of it damaging to, the state's case, the prosecutor plunged into a vigorous attack upon the credibility of his own witness. In point of fact, the lack of this witness' testimony would not be damaging to the state's case. By his own admissions and the testimony of the coperpetrator, Reed, the state had made an airtight case against appellant as an aider and abettor to the crime. Appellant's defense of "withdrawal" from the crime was clearly not shown and could not be believed. Washington's testimony was merely cumulative.

It is for this very reason—that Washington's testimony was cumulative and unimportant—that we will not reverse this case based on the prosecutor's procedural error. We can easily say, after reviewing the entire record, the error did not contribute to the verdict and was harmless beyond a reasonable doubt. *State v. Cobb*, 115 Ariz. 484, 566 P.2d 285 (1977).

For the same reason, any unfairness surrounding all the testimony of this witness, was also harmless error.

The judgments of conviction and the sentences are affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concur.

---

3. This rule has since changed with the adoption of the new Rules of Evidence for Courts in Arizona, rule 607, effective September 1, 1977.