594 P.2d 72

STATE of Arizona, Appellee,

v.

Robert EDWARDS a/k/a Willie Barefield, Appellant.

No. 3957.

Supreme Court of Arizona,
En Banc.

March 27, 1979.

Rehearing Denied May 1, 1979.

Bruce E. Babbitt, former Atty. Gen., Robert K. Corbin, Atty. Gen., by William J. Schafer, III, and Crane McClennen, Asst. Attys. Gen., Phoenix, attorneys for appellee.

Molloy, Jones, Donahue, Trachta & Childers by Michael J. Meehan, Tucson, attorneys for appellant.

HAYS, Justice.

This is an appeal by Robert Edwards from his convictions of robbery, burglary, and first degree murder, and from his sentence of death for the murder conviction. We have jurisdiction pursuant to article 6, § 5 of the Arizona Constitution and A.R.S. § 13–4031. We affirm the convictions and sentences for robbery and burglary, and the murder conviction, but remand the murder conviction for resentencing.

We are presented with nine issues on appeal:

1. Whether Edwards' confession was admissible;
2. Whether, in deference to Edwards' right to a speedy trial, the state must forego its right to file a special action when a speedier alternative is available;
3. Whether Edwards' right to a speedy trial was violated;
4. Whether Edwards's trial in prison garb, over his objection, violated his right to due process;
5. Whether the preclusion of a defense witness was an abuse of discretion;
6. Whether the prosecutor's statements in his closing argument constituted an impermissible comment on Edwards' failure to take the stand;
7. Whether an unintended or accidental death may be the basis for a felony murder conviction;

8. Whether A.R.S. § 13–1641 (now renumbered as § 13–116) precludes conviction and punishment for robbery and burglary in addition to first degree murder when the latter is a felony murder; and

9. Whether there was sufficient evidence of causation in the record to support the felony murder conviction.

In October, 1974, a bar in Tucson was robbed at gunpoint. During the robbery the proprietor suffered a fatal heart attack. After obtaining some money and valuables the robbers fled. The police investigated the crime but soon exhausted all leads. In January, 1976, they obtained information that led to the arrest of Edwards and several co-conspirators. Edwards was subsequently convicted of robbery, burglary, and first degree murder.

## CONFESSION

Edwards was arrested at his home at 4:00 P.M. He was not read the *Miranda*[1] warnings at that time nor did he make any statements, but was taken to the police department where he was read his rights. He indicated he understood them and that he would submit to questioning. After again having his rights explained to him, he was interrogated by a detective who told him that a co-conspirator had implicated him in the robbery of a Tucson bar. Edwards denied involvement and gave a taped alibi statement, at the beginning of which he was again read his rights. After the statement, he asked the detective if he could make a deal. The detective replied that he wanted a statement but that he could make no deals. Consequently, Edwards asked to talk to the county attorney about making a deal, which he was allowed to do. The negotiations were unsuccessful. Edwards then reapproached the detective about a deal. The detective repeated his earlier statement that he could make no deals, to which Edwards replied, "I want an attorney before making a deal." He did not indicate, however, nor did the detective interpret his statement to mean that he wanted an attorney before further interrogation or that he wished to remain silent thereafter. The detective, nevertheless, ceased questioning immediately after Edwards' statement at about 6:30 P.M. Thereafter, Edwards was taken to the county jail.

At 9:15 the next morning two other detectives arrived at the jail and asked to see Edwards. Although they were from the same section as the detective who had questioned Edwards the day before and knew that he had been questioned, they did not know that he had made the statement about an attorney. When the detention officer told Edwards that the detectives were there to see him, he told the officer that he did not wish to speak to anyone. The officer told him that he had to. Edwards was thereupon taken to see the detectives. They identified themselves and said they wanted to talk to him. At that point they explained to him that he had the right to remain silent and the right to an attorney and the other *Miranda* rights. Edwards said that he was willing to talk to them but that he first wanted to hear the taped statement of his co-conspirator that the detective had told him about the day before. After a portion of the tape was played, he told the detectives that he would make a statement but that he did not want it recorded because it could be used against him in court. The detectives thoroughly explained that whether or not the statement was recorded did not matter because an oral statement could also be used against him in court. Edwards replied "I'll tell you anything you want to know, but I don't want it on tape." Edwards then gave a statement indicating his involvement in the robbery. The interrogation concluded at 10:30 A.M. Prior to trial, Edwards moved to suppress the confession and a hearing was held. The court found that the statement was voluntarily given but that the detectives violated *Miranda* when they reapproached Edwards after his statement about an attorney. However, the next day the judge reversed his ruling based on *State*

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

v. *Travis*, 26 Ariz.App. 24, 545 P.2d 986 (1976), and found the confession to be admissible substantively.

Edwards claims on appeal that he exercised both his right to an attorney and his right to remain silent, that he did not subsequently waive either right, and that in any case his statement was not intelligently made and was therefore involuntary. First, we must determine whether, having initially waived his rights, Edwards adequately reclaimed them by declaring that he would wait to talk to an attorney before making a deal.

*Invocation of Previously Waived Miranda Rights*

*Miranda v. Arizona*, 384 U.S. 436, 444–45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706–07 (1966), holds that if a defendant indicates "in any manner" that he wishes an attorney before speaking or that he does not wish to be interrogated further, questioning must cease. Edwards points to this language in *Miranda* and argues that his statement was adequate to raise both his right to an attorney and his right to remain silent.

The state argues, however, that by stating he wanted to see an attorney before making a deal, Edwards was not raising his right to an attorney as such, nor saying that he wished to remain silent, but only asserting that he wanted to see an attorney before talking anymore about a deal. For this proposition, the state relies on *State v. Travis, supra*. There, after the defendant had been arrested and read his rights, he made equivocal statements about desiring an attorney. A detective asked him if he would submit to a breathalyzer test and allow the interview to be recorded. The defendant responded that he wanted to seek the advice of counsel before granting either request. The detective then told him that his wife had died and that he would now be charged with first degree murder. The defendant broke down and confessed

his involvement. In ruling that his confession was admissible, the court reasoned that the defendant never made a definite statement to the effect that he either wanted to talk to an attorney before answering questions or preferred that questioning cease. *Id.* 26 Ariz.App. at 29, 545 P.2d at 991.

▪ Notwithstanding the "in any manner" language of *Miranda, supra,* we are convinced that *Miranda* was not intended to require that every reference to an attorney, regardless of its ambiguity, must be construed as an invocation of the *Miranda* rights.[2] We think *Travis* is correct in looking at a statement in the context made and attempting to determine whether it is sufficiently clear to be fairly interpreted as a request for an attorney or a demand that interrogation cease. There is much authority in support of this view. *See, e. g., United States v. Rodriguez-Gastelum*, 569 F.2d 482, 484 (9th Cir.), *cert. denied*, 436 U.S. 919, 98 S.Ct. 2266, 56 L.Ed.2d 760 (1978); *United States v. Tokoph*, 514 F.2d 597, 605 (10th Cir. 1975); *United States v. Howard*, 152 U.S.App.D.C. 258, 259–60, 470 F.2d 406, 407–08 (1972); *State v. Knapp*, 114 Ariz. 531, 538, 562 P.2d 704, 711 (1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978); *State v. Gholson*, 112 Ariz. 545, 548, 544 P.2d 654, 657 (1976); *State v. Garrison*, 16 Or.App. 588, 519 P.2d 1295, 1300–01 (1974).

▪ Applying this reasoning in an evaluation of Edwards' statement, it appears at first blush that the state's argument is correct, *i. e.*, that Edwards was saying that he desired an attorney only if a deal was discussed further. However, looking at the statement in the context made, we find such an interpretation erroneous.

To accept the state's position in this case and allow Edwards' confession to stand while holding that he asked for an attorney for the limited purpose of making a deal would be illogical. Edwards wanted an attorney before making a deal. His part of

**2.** *Miranda* itself would seem to concede as much by indicating its approval of the policy of the Federal Bureau of Investigation that the initial decision as to whether, in an ambiguous

statement, the defendant has asked for an attorney is for the agent on the scene. *See* 384 U.S. at 485–86 & n. 55, 86 S.Ct. at 1633–34 & n. 55, 16 L.Ed.2d at 729–30 & n. 55.

the deal would have been his confession. Therefore, to allow him to make a confession without counsel would be to deny him his right to counsel for the very purpose, albeit limited, for which it was invoked. Likewise, it would be just as illogical to hold that his statement was enough to invoke his right to remain silent only if questioned about a deal. We hold therefore, looking at Edwards' statement in the context made, that although it was equivocal, its meaning was sufficiently clear and therefore it must be interpreted as a request for counsel and as a request to remain silent until counsel was present.

We must now determine whether, after invoking his right to counsel and right to remain silent, Edwards waived them. Our discussion at this point is twofold: first, whether *Miranda* creates a per se rule against waiver of the right to an attorney or the right to remain silent after being invoked; and whether the waiver, if constitutionally permissible, was voluntary.

*Per Se Rule Regarding Right to Attorney*

 Edwards argues that *Miranda* creates a per se rule that once a defendant invokes his right to counsel he may not then be questioned again by police until an attorney is present. We do not agree. Although *Miranda* does require that questioning cease after a defendant asks for an attorney, we do not believe it precludes the defendant from changing his mind either on his own or in response to an inquiry by police so long as the decision is voluntarily made. We agree with the Ninth Circuit decision in *United States v. Rodriguez-Gastelum*, 569 F.2d 482 (9th Cir.), *cert. denied*, 436 U.S. 919, 98 S.Ct. 2266, 56 L.Ed.2d 760 (1978), that per se rules often cause a court to lose touch with the purpose behind the rules. The goal of *Miranda* is to insure that the right to an attorney and the right to remain silent are not reduced to meaningless phrases as the result of overzealous police practices. 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. However, "a blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity, and *deprive suspects of an opportunity to make informed and intelligent assessments of their interests.*" (Emphasis added.) *Michigan v. Mosley*, 423 U.S. 96, 102, 96 S.Ct. 321, 326, 46 L.Ed.2d 313, 320 (1975). Reading *Miranda* to create such a per se rule would preclude a defendant, upon intelligent reflection, from voluntarily and knowingly acting as he thinks best. It would work to "imprison a man in his privileges." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 280, 63 S.Ct. 236, 242, 87 L.Ed. 268, 275 (1942). We therefore hold, as did the Ninth Circuit in *Rodriguez-Gastelum, supra*, that *Miranda* does not create a per se rule precluding a defendant from initiating further discussions with police or from responding to subsequent inquiries from police after the right to an attorney has been invoked so long as the waiver is otherwise voluntary.

*Per Se Rule Regarding Right to Remain Silent*

Edwards also claims that *Miranda* creates a per se rule against questioning by police after the defendant has invoked his right to remain silent. We previously rejected this assertion in *State v. Hatton*, 116 Ariz. 142, 568 P.2d 1040 (1977), where the defendant, having invoked his right to remain silent, was twice reapproached by the police and interrogated. Citing *Michigan v. Mosley*, 423 U.S. 96, 102–03, 96 S.Ct. 321, 326, 46 L.Ed.2d 313, 321 (1975), for the proposition that *Miranda* cannot be interpreted to " 'create a per se proscription of indefinite duration upon any further questioning by any police officer on any subject,' " we held that the questioning of the defendant by police was permissible since the defendant's right to cut off questioning was scrupulously honored. 116 Ariz. at 146, 568 P.2d at 1044. We find *Hatton* controlling. Since, as in *Hatton*, Edwards was reminded of his *Miranda* rights and was asked by the detectives if he would voluntarily make a statement, we conclude that his right to cut off questioning was scrupulously honored.

*Voluntariness of Waiver*

 Finally, Edwards claims that his confession was involuntary since it was not knowingly made. In Arizona, confessions are prima facie involuntary and the burden is on the state to show by a preponderance of the evidence that the confession was freely and voluntarily made. *State v. Hall,* 120 Ariz. 476, 586 P.2d 1288 (1978). In determining the voluntariness of a confession, the trial court must look to the totality of the circumstances surrounding the confession and decide whether the defendant's action is knowing and intelligent and whether his will has been overborne. *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854, 862 (1973); *State v. Knapp,* 114 Ariz. 531, 562 P.2d 704 (1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978). Once the court finds, as it did in this case, that the confession is voluntary, the finding will not be upset on appeal absent clear and manifest error. *State v. Edwards,* 111 Ariz. 357, 361, 529 P.2d 1174, 1178 (1974). We find no such clear and manifest error.

 Edwards claims that his comment "I'll tell you anything you want to know, but I don't want it on tape" reveals his misunderstanding of the use of the confession he gave and that therefore it was not knowingly given. The state argues that the admissibility of an oral statement was thoroughly explained and that he refused to have it recorded for reasons of his own, *i. e.,* because of the impression he received after just having listened to his co-conspirator's taped confession. In any case, recognizing that the trial court found that Edwards'

statement was voluntarily and knowingly made, and applying the rules of law set out above, we cannot say that the court's finding was clearly and manifestly erroneous.

In conclusion, we find that Edwards did invoke his right to an attorney and his right to remain silent even though his statement was not altogether clear. We also find, however, that the question whether he waived them is not amenable to a per se rule and thus is left to the trial court whose decision must be guided by the rules for determining voluntariness. The trial court's finding that the waiver and confession were voluntarily and knowingly made is upheld.

*Written Waiver Requirement*

Edwards claims that even if he did waive his *Miranda* rights, 17 A.R.S. Rules of Criminal Procedure, rule 6.1(c), indicates that a waiver of the right to counsel is ineffective unless made before a judge and in writing. We do not agree.

 Although rule 6.1 can be read as Edwards reads it,[3] it was not intended to require judicial presence and written waiver of counsel before custodial interrogation nor have we ever required such in order for the defendant to waive his right to an attorney during custodial interrogation. *See, e. g., State v. Hall,* 120 Ariz. 476, 586 P.2d 1288 (1978); *State v. Ferguson,* 119 Ariz. 55, 579 P.2d 559 (1978); *State v. Arnett,* 119 Ariz. 38, 579 P.2d 542 (1978); *State v. Ramirez,* 116 Ariz. 259, 569 P.2d 201 (1977); *State v. Hatton,* 116 Ariz. 142, 568 P.2d 1040 (1977); *State v. Knapp,* 114 Ariz. 531, 562 P.2d 704 (1977), *cert. denied,* 435 U.S. 908,

---

**3.** 17 A.R.S. Rules of Criminal Procedure, rule 6.1, provides in relevant part:

 a. Right to be Represented by Counsel. A defendant shall be entitled to be represented by counsel in any criminal proceeding, except in those petty offenses such as traffic violations where there is no prospect of imprisonment or confinement after a judgment of guilty. The right to be represented shall include the right to consult in private with an attorney, or his agent, as soon as feasible after a defendant is taken into custody, at reasonable times thereafter, and sufficiently in advance of a proceeding to allow adequate preparation therefor.

. . . . .

 c. Waiver of Rights to Counsel. A defendant may waive his rights to counsel under (a) and (b), in writing, after the court has ascertained that he knowingly, intelligently and voluntarily desires to forego them. When a defendant waives his rights to counsel, the court may appoint an attorney to advise him during any stage of the proceedings. Such advisory counsel shall be given notice of all matters of which the defendant is notified.

98 S.Ct. 1458, 55 L.Ed.2d 500 (1978); *State v. Jenkins*, 111 Ariz. 13, 522 P.2d 1090 (1974). We therefore hold that rule 6.1(c) does not require that a waiver of a defendant's right to an attorney at custodial interrogation be in writing or before the court.

## SPEEDY TRIAL

Edwards raises two distinct arguments regarding his right to a speedy trial: first, that the state is required by 17 A.R.S. Rules of Criminal Procedure, rule 8, to forego use of a special action when another procedural option is available whether or not the trial proceedings have been stayed; and second, that the delay with its allegedly resulting prejudice denied him his sixth amendment rights.

### Rule 8 Violation

Edwards was arraigned on January 23. On March 5, Edwards moved for a redetermination of probable cause. The court granted the motion on March 22 finding that the state had failed to reveal all exculpatory information in its possession to the grand jury, but also finding that the state had not acted in bad faith. At that point, the state could have reindicted Edwards or it could have challenged the trial court's ruling by special action. It chose the latter alternative by filing a motion to stay and a special action. The court of appeals granted the stay but denied relief and later denied a motion for rehearing. The state then petitioned this court for review which was denied on July 20. On July 30, Edwards was reindicted following a determination by the grand jury that probable cause existed.

Edwards argues that the state should simply have reindicted him pursuant to the trial court's order rather than seeking appellate relief and that since it chose the more time-consuming procedure, the resulting period of delay (about four months) should be included in the rule 8 speedy trial time periods. We do not agree for two reasons.

First, there was a stay in effect during the period of the appeal that necessarily halted all proceedings in the trial court. Such a period is excluded time under rule 8. *State v. Steele*, 23 Ariz.App. 73, 76, 530 P.2d 919, 922 (1975). Second, to require the state to employ the less time-consuming procedure when another is authorized by law would deprive the state of a legitimate remedy. Where, as here, there is no showing that the state's action was frivolous or taken in bad faith with intent to delay the defendant's trial, we think a rule limiting the options available to the state is wholly inappropriate. Computing the time involved while excluding the time taken by the appeal, the defendant had not, as of the date of his reindictment, been denied a speedy trial in violation of rule 8. Finding that no violation had occurred to that point, and noting that the speedy-trial limits begin again following reindictment, *State v. Soto*, 117 Ariz. 345, 348, 572 P.2d 1183, 1186 (1977), and since Edwards alleges no subsequent speedy-trial violation unless the earlier period is included, we find that rule 8 was not violated.

### Sixth Amendment Speedy-Trial Violation

Edwards alleges that he was denied his constitutional right to a speedy trial by his lengthy incarceration while awaiting trial. He was arrested on January 19, 1976 and finally went to trial on March 17, 1977, a delay of 14 months. In *State v. Soto*, 117 Ariz. 345, 572 P.2d 1183 (1977), we held that a delay of nine months was sufficient to trigger further inquiry into the trial delay. That inquiry focuses on four factors set out by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972):

1. The length of the delay.
2. The reasons for the delay.
3. The defendant's assertion of his right.
4. The prejudice caused the defendant.

Of these factors, the first is least important while the last is most important. *State v. Soto, supra.*

*Delay*

 A 14-month delay seems to be excessive, but without looking into the reasons for the delay, we cannot conclude that the delay was prejudicial per se.

*Reason for Delay*

Only four months of the 14-month delay was caused by the state. Edwards claims that the state should be chastised for using four months to appeal an order when it could have simply reindicted as it ultimately was required to do. He cites *United States v. Perry*, 353 F.Supp. 1235, 1237 (D.D.C.1973), as authority for his position. There, the court did criticize the prosecution for delaying trial, but because it had taken fourteen months for appeals which could have been completed in four (as they were here), not because the state had chosen to appeal. On the other hand, in *United States v. Osuna-Sanchez*, 446 F.2d 566 (9th Cir. 1971), *cert. denied*, 404 U.S. 1022, 92 S.Ct. 698, 30 L.Ed.2d 672 (1972), the court looked at the diligence of the prosecution in the appeal process and held that a six-month delay because of the appeal did not violate the defendant's right to a speedy trial.

Edwards attempts to distinguish *Osuna-Sanchez, supra,* and similar cases, e. g., *People v. Stewart*, 61 Mich.App. 167, 232 N.W.2d 347 (1975), that approve the use of interlocutory appeals by the state by pointing out that these cases involve appeals from trial court orders suppressing prosecutor's evidence and were therefore absolutely necessary to the prosecution's cases. We are not inclined to accept this distinction nor hold that the state's right to challenge an adverse trial court ruling by special action prior to a criminal trial is limited to those situations in which it is absolutely necessary, at least in the absence of any evidence in the record to show that the appeal was frivolous or taken in bad faith with the intent to delay the trial.

*Defendant's Assertion of Right*

 Although the state argues to the contrary, we find after examining the record that Edwards did adequately and repeatedly assert his right to a speedy trial.

*Prejudice to Defendant*

 Edwards claims that he was prejudiced by the delay because he was not able to locate two alibi witnesses essential to his defense. We do not believe the record supports Edwards' claim of prejudice for the following reasons. Edwards made no offer of proof to the court of the alleged testimony of the alibi witnesses had they been located. Nor did he show that the witnesses would have been available if the state had not delayed the trial for four months. He called one alibi witness in whose *sole* presence he claimed he was during the robbery. He was granted numerous continuances in order to locate the witnesses and the court issued several requests for attendance of witnesses to one state in which it was thought the witnesses were residing. The state had never interviewed the witnesses nor did it know where they lived.

Although we recognize that these witnesses may have aided Edwards at trial, we cannot say that their absence prejudiced him to such an extent that he was denied a fair trial. He is, after all, entitled to a fair trial, not a perfect one. *Bruton v. United States*, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476, 484 (1968). Since the court and the state did everything they could have done to locate the witnesses and since Edwards did not show that the witnesses would have been available without the delay caused by the state, we find that Edwards was not unduly prejudiced as a result of the delay. *See State v. Watson*, 114 Ariz. 1, 6, 559 P.2d 121, 126 (1976), *cert. denied*, 430 U.S. 986, 97 S.Ct. 1687, 52 L.Ed.2d 382 (1977); *Sigard v. State*, 537 S.W.2d 736, 739 (Tex.Cr.App.1976).

Edwards also alleges other bases for prejudice. We have reviewed these claims and find them equally without merit. Therefore, having considered all the factors required by *Barker v. Wingo, supra,* we conclude that Edwards' constitutional right to a speedy trial was not violated.

## PRISON GARB

■ Edwards claims he was denied the due process right to a presumption of innocence by being tried in prison garb, citing *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). In *Estelle*, the Supreme Court held that an accused may not be compelled against his will to go to trial in identifiable prison garb. Edwards' reliance on *Estelle* is misplaced. *Estelle* deals with the case in which the defendant was tried in *identifiable* prison garb. There is no indication in the record that Edwards' prison clothes were identifiable as such. No effort was made by defendant to make an offer of proof as to the identifiable nature of his clothes. It is well-settled law in Arizona that where the record is silent, the missing facts will be presumed to support the conviction. *E. g., State v. Caldwell*, 117 Ariz. 464, 468, 573 P.2d 864, 868 (1977); *State v. Williams*, 113 Ariz. 442, 444, 556 P.2d 317, 319 (1976); *State v. Bojorquez*, 111 Ariz. 549, 553, 535 P.2d 6, 10 (1975).

## PRECLUSION OF DEFENSE WITNESS

■ During the trial, Edwards attempted to call a witness that would have testified that he was intoxicated at 6:00 P. M., the night before the robbery. Even though Edwards was aware of both the witness and the intoxication defense long before trial, neither had been disclosed to the state. The state objected not only because Edwards had known of the witness and of the new defense before trial and had not disclosed them, but also because it believed that testimony of intoxication at 6:00 P. M. was not relevant to the defendant's participation in a robbery at 1:00 A. M. the next morning, seven hours later. The court excluded the witness as a sanction for Edwards' nondisclosure. Edwards argues that exclusion of the witness was an abuse of discretion by the trial court. We disagree.

■ We have repeatedly held that the imposition of a sanction pursuant to 17 A.R.S. Rules of Criminal Procedure, rule 15.7, is within the sound discretion of the trial court, and absent a showing of prejudice this court will not find an abuse of discretion. *State v. Ramirez*, 116 Ariz. 259, 268, 569 P.2d 201, 210 (1977); *State v. Clark*, 112 Ariz. 493, 495, 543 P.2d 1122, 1124 (1975). The prejudice must be such that the defendant has been denied a fair trial. *See State v. Dorow*, 116 Ariz. 294, 295, 569 P.2d 236, 237 (1977).

We do not believe that Edwards was prejudiced by the preclusion of the witness to such an extent that he was denied a fair trial. The testimony that he saw Edwards intoxicated some seven hours before the crime, although probably admissible, was not so dispositive that its absence denied Edwards a fair trial.

## CLOSING ARGUMENT

■ As the prosecutor began his closing argument he wrote on a chalk board, "Defendant confessed." At the beginning of Edwards' closing argument, Edwards, representing himself, wrote on the chalk board, "Defendant did not confess." He also told the jury during his closing argument that he did not confess to the detectives. In his rebuttal, the prosecutor made the following statements which Edwards characterizes as impermissible comments on his failure to take the stand but which the state characterizes as a justifiable response to Edwards' statements which were unsupported by the evidence before the jury:

" 'The evidence, you will recall, is what the witnesses say from the witness stand here under oath. And there is an important thing about witnesses and what they testify to. They are subject to cross-examination. That is, you can ask the witness, "Well, how do you remember that, Mr. Witness? How do you remember this, Mr. Witness? Isn't such and such true, Mr. Witness?"

The witness answers you back. That's testimony. That's evidence.

What evidence is there that he did not confess? Did any witness come in here and say from the witness stand under oath that there was no confession, there was no confession and the police are lying, there was no confession? That incident never occurred.

No, ladies and gentlemen, nobody testified to that. No witnesses were called that testified about that confession not being made. No witnesses whatsoever.

The most conclusive statement is his own statement. He never said he didn't confess other than writing it on the easel.

He told you he wasn't involved in the crime, he wasn't guilty. Here he told you that like I'm telling you, like I'm talking to you, not under oath.' "

In determining whether these statements were improper, we must obviously examine them in the context made. *See State v. Ramirez*, 116 Ariz. 259, 263, 569 P.2d 201, 205 (1977). The state had introduced substantial evidence that Edwards had confessed, including the content of his confession. Edwards chose not to testify at trial. He had introduced no evidence whatsoever that he had not confessed. Before the closing arguments he was warned by the judge not to make statements that were unsupported by the evidence before the jury. Nevertheless, he argued that he had not confessed and wrote "Defendant did not confess" on the chalk board.

Upon reviewing these circumstances, we conclude that Edwards' oral and written statements before the jury were improper since they were wholly unsupported by the evidence. *State v. Dutton*, 106 Ariz. 463, 465–66, 478 P.2d 87, 89–90 (1970). The prosecutor's statements were made in response to Edwards' argument. The error was invited by Edwards. He cannot now raise error that he invited hoping to benefit thereby. *State v. Purcell*, 117 Ariz. 305, 308, 572 P.2d 439, 442 (1977); *State v. Wilcynski*, 111 Ariz. 533, 535, 534 P.2d 738, 740, *cert. denied*, 423 U.S. 873, 96 S.Ct. 141, 46 L.Ed.2d 104 (1975).

## FELONY MURDER CONVICTION

Edwards argues that the death of the victim from a heart attack that occurred during the robbery may not form the basis of a felony murder conviction because it was unintended and accidental. The cases are to the contrary. In *State v. Ferrari*, 112 Ariz. 324, 328, 541 P.2d 921, 925

(1975), we noted that a murder that is committed in perpetration of a burglary or any other specifically named felony is punishable as felony murder whether wilful and premeditated or only accidental. *See also State v. Hitchcock*, 87 Ariz. 277, 350 P.2d 681 (1960), *cert. denied*, 365 U.S. 609, 81 S.Ct. 823, 5 L.Ed.2d 821 (1961); *People v. Stamp*, 2 Cal.App.3d 203, 82 Cal.Rptr. 598 (1969), *cert. denied*, 400 U.S. 819, 91 S.Ct. 36, 27 L.Ed.2d 46 (1970); *State v. McKeiver*, 89 N.J.Super. 52, 213 A.2d 320 (1965).

Edwards also contends that a conviction and sentence for robbery, burglary, and murder violate the double-punishment statute, A.R.S. § 13–1641 (now § 13–116). In *State v. Miniefield*, 110 Ariz. 599, 603, 522 P.2d 25, 29 (1974), we held that convictions and sentences for both first degree murder and arson (the underlying felony) did not violate A.R.S. § 13–1641. *Accord, State v. Clayton*, 109 Ariz. 587, 600, 514 P.2d 720, 733 (1973). We find these cases controlling.

## SUFFICIENCY OF THE EVIDENCE

Edwards complains that there was not sufficient evidence on which the jury could find that the robbery caused the victim's death. We do not agree. A pathologist testifying for the state indicated that, in his expert opinion, the death resulted from a heart attack induced by the anxiety resulting from being robbed at gunpoint. He reiterated his opinion on cross and again on redirect. We think there was more than adequate competent evidence before the jury to support the causation element.

## SENTENCING

Since Edwards was sentenced pursuant to the portions of A.R.S. § 13–454 which we held unconstitutional in *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978), *cert. denied*, —— U.S. ——, 99 S.Ct. 1254, 59 L.Ed.2d 478, this case is remanded for resentencing.

We have reviewed the entire record for fundamental error and have examined all arguments raised by Edwards and find that

he was not denied a fair trial. The convictions for robbery, burglary, and first degree murder are affirmed along with the sentences for robbery and burglary. The murder conviction is remanded for resentencing pursuant to *State v. Watson, supra.*

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN, J., concur.

GORDON, Justice (dissenting):

The majority opinion states that *Miranda* does not place a per se ban on police questioning of a suspect after he has invoked his right to counsel. This is clearly the law in Arizona. This Court has held that questioning a suspect after he has asserted his *Miranda* rights is permissible, so long as the suspect's right to cut off the questioning is "scrupulously honored." *State v. McGinty,* 120 Ariz. 162, 584 P.2d 1153 (1978); *State v. Hatton,* 116 Ariz. 142, 568 P.2d 1040 (1977).

Similarly, the Ninth Circuit Court of Appeals, in *United States v. Rodriguez-Gastelum,* 569 F.2d 482 (9th Cir. 1978) *cert. denied,* 436 U.S. 919, 98 S.Ct. 2266, 56 L.Ed.2d 760 (1978), held that although questioning must stop after a right to counsel is asserted, it can later resume if the suspect makes a waiver of the right. Such a waiver of a previously asserted right must meet the definition pronounced in *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). That is to say, it must be an intentional relinquishment or abandonment of a known right or privilege. The *Rodriguez-Gastelum* opinion specifically concluded that a waiver could meet this test even if the questioning was resumed at the instigation of the police.

The facts of this case, however, do not meet the requirements of either the Ninth Circuit or Arizona case law. Edwards asserted that he wanted an attorney before making a deal. At this point all questioning ceased. The next morning, the detention officer told Edwards that detectives were there to see him. *Edwards told the officer that he did not wish to speak to anyone. The officer told him that he had to.*

Because Edwards was told that he had to talk to the detectives, I disagree with the majority's conclusion that his right to cut off the questioning was scrupulously honored. For the same reason his subsequent statements were not an intentional relinquishment or abandonment of his right to counsel, even though the detectives once again read him his *Miranda* rights. This is evidenced by the fact that when asked at the motion to suppress hearing why he had not once again told these detectives that he wanted an attorney, he responded: "I didn't think you had to keep asking for an attorney over and over and over."

Moreover, I cannot condone the tactics of the investigating detectives. Despite the suspect's prior assertion of his right to counsel, detectives questioned him the following morning, knowing that an attorney would not be appointed for him until the afternoon. I find the language of *State v. Sauve,* 112 Ariz. 576, 544 P.2d 1091 (1976) controlling on these facts.

"After the defendant's refusal to answer questions, the officers ceased interrogation, but their *subsequent conduct and statements were made to persuade the defendant to reconsider his position.* Any response under such circumstances cannot be considered 'volunteered,' and the statements were not admissible." 112 Ariz. 576, 579, 544 P.2d 1091, 1094. (Emphasis added.)

Despite Arizona's rejection of a per se rule regarding the right to remain silent, a suspect's right to cut off questioning must be scrupulously honored, and his statements must be voluntarily made. Because he was told that he had to talk to the detectives and because the questioning took place shortly before an attorney was to be appointed, I would find the defendant's statements to be inadmissible.