NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DINARR ANTWAIN WHITESIDE, *Appellant.*

Nos. 1 CA-CR 24-0683, 1 CA-CR 24-0684, 1 CA-CR 24-0685,
1 CA-CR 24-0688 (Consolidated)

FILED 03-24-2026

Appeal from the Superior Court in Maricopa County
Nos. CR2023-001018-001, CR2023-115706-001,
CR2024-111017-002, CR2023-115704-001

The Honorable Kristin Culbertson, Judge
The Honorable Mark H. Brain, Judge

**AFFIRMED**

COUNSEL

Law Office of Randal B. McDonald, Phoenix
By Randal McDonald
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Gracynthia Claw
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the Court's decision, in which Presiding Judge Daniel J. Kiley and Judge Cynthia J. Bailey joined.

---

**W I L L I A M S**, Judge:

¶1 Dinarr Antwain Whiteside appeals his convictions and sentences for shoplifting, drug possession, and burglary. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 In separate indictments, the State charged Whiteside with one count of shoplifting—CR2023-001018-001 ("*Walmart*")—and three counts of burglary in the third degree—CR2023-115706-001 ("*Circle K I*"); CR2024-111017-002 ("*Walgreens*"); and CR2023-115704-001 ("*Circle K II*")—alleging he committed a series of retail thefts. In the *Walmart* indictment, the State also charged Whiteside with one count of possession or use of narcotic drugs, alleging he had fentanyl on his person at the time of his arrest for shoplifting. In all cases, the State alleged aggravating circumstances and that Whiteside had numerous prior felony convictions.

¶3 The superior court consolidated the *Circle K I* and *Circle K II* charges for trial (consolidated, "*Circle K*"), and *Walgreens* and *Walmart* were tried separately. Three separate juries found Whiteside guilty as charged. The juries also found the State proved the alleged aggravating circumstances.

¶4 The superior court consolidated all the cases for sentencing. After a trial on prior convictions, the court found Whiteside had seven prior felony convictions and sentenced him to a presumptive term of 2.5 years' imprisonment on the count of drug possession, a consecutive maximum term of 3 years' imprisonment on the *Circle K I* count of burglary, a consecutive presumptive term of 2.5 years' imprisonment on the *Walgreens* count of burglary, a consecutive presumptive term of 2.5 years' imprisonment on the *Circle K II* count of burglary, and a jail term of six months (time served) on the count of shoplifting.

¶5 Whiteside timely appealed from each case. On the State's motion, we consolidated the four appeals for appellate disposition. We

have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### I.      Joinder of Charges for Trial

¶6      Whiteside challenges the superior court's consolidation of *Circle K I* and *Circle K II* for trial. First, he contends the two burglary offenses lacked sufficient similarity to justify joinder of the separate charges. Second, he contests the court's finding that evidence of the discrete offenses was cross-admissible, arguing the general prohibition on other-act evidence barred the cross-admission of evidence in these "run-of-the mill shoplifting" cases.

¶7      Before trial, the State moved to join the *Circle K I* and *Circle K II* charges, characterizing the facts underlying each offense as "very similar." In its proffer, the State pointed to the temporal proximity of the offenses (June 2022 and July 2022), the common victim (the same Circle K location), the same investigating detective, the same method of identification (the retailer's surveillance video), and the similar commission of the burglary offense (the perpetrator accessed the area behind the "employees-only" counter to retrieve restricted merchandise). *See State v. Burns*, 237 Ariz. 1, 14, ¶ 32 (2015) ("Joinder is permitted if separate crimes arise from a series of connected acts and are provable by overlapping evidence.").

¶8      Whiteside objected, contending he would be prejudiced if a single jury viewed both surveillance videos. Whiteside also discounted the State's claim of overlapping evidence, noting different store clerks were present when the alleged offenses occurred. After hearing from counsel, the superior court overruled Whiteside's objection and granted the State's motion, finding the evidence of the separate offenses cross-admissible "to demonstrate identity, et cetera, et cetera."

¶9      We generally review a superior court's rulings on joinder and severance for an abuse of discretion. *State v. Hausner*, 230 Ariz. 60, 74, ¶ 43 (2012). Because Whiteside neither renewed his objection nor moved for severance at trial, however, we review only for fundamental error. *See* Ariz. R. Crim. P. 13.4(c) ("The right to severance is waived if the defendant fails to timely file and *renew* a proper motion for severance.") (emphasis added); *see also State v. Flythe*, 219 Ariz. 117, 119-20, ¶¶ 5, 10 (App. 2008) (explaining the renewal requirement, which allows the superior court "to reassess the need for separate trials as the evidence is developed," is "strictly applied").

Under that standard, Whiteside must show that joinder was error, the error was fundamental, and the error caused him prejudice. *See State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018). An error is fundamental if it: (1) goes to the foundation of the case, (2) deprives the defendant of a right essential to his defense, or (3) is so egregious that the defendant could not have received a fair trial. *Id.* at 142, ¶ 21.

¶10 "The rules for joinder and severance," Arizona Rules of Criminal Procedure ("Rule") 13.3 and 13.4, "must be read together." *See State v. Lee*, 147 Ariz. 11, 17 (App. 1985). As relevant here, the superior court may join separately charged offenses for trial "if they . . . are of the same or similar character." Ariz. R. Crim. P. 13.3(a)(1), (c). But if similarity is the sole basis for joinder, the defendant is entitled to severance as a matter of right "unless evidence of the other offense or offenses would be admissible [under the applicable rules of evidence] if the offenses were tried separately." Ariz. R. Crim. P. 13.4(b); *see also State v. Johnson*, 212 Ariz. 425, 429, ¶ 9 (2006). In other words, when a superior court joins separate indictments based on the similarity of the alleged offenses, the defendant "only has a remedy if the [other] act evidence would not have been admissible" under Arizona Rule of Evidence ("Evidence Rule") 404(b). *State v. Ives*, 187 Ariz. 102, 106 (1996).

¶11 Evidence of other crimes, wrongs, or acts is inadmissible to prove a defendant's character or propensity to act in a certain way. Ariz. R. Evid. 404(b). It is admissible, however, for non-propensity purposes, such as showing "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* To admit other-act evidence, a superior court must first find: (1) there is clear and convincing evidence the defendant committed the other act, (2) the evidence is relevant under Evidence Rule 402, (3) the evidence is offered for a proper purpose under Evidence Rule 404(b), and (4) the probative value of the evidence is not substantially outweighed by the potential for unfair prejudice under Evidence Rule 403. *State v. Terrazas*, 189 Ariz. 580, 584 (1997); *State v. Mott*, 187 Ariz. 536, 545 (1997). In reviewing a superior "court's finding that the other-act evidence would have been cross-admissible, . . . we consider only the evidence before the court when it ruled on the motion." *State v. Goudeau*, 239 Ariz. 421, 444–45, ¶ 60 (2016); *see also State v. Van Winkle*, 186 Ariz. 336, 339 (1996) ("In considering whether the trial court erred in denying a motion to sever, we are mindful that the trial court exercises considerable discretion in determining whether, in light of the evidence then before the court, the defendant has made the requisite showing of prejudice.").

¶12 Based on the information available when it granted the motion to consolidate, the superior court did not err, much less commit fundamental error, by joining the *Circle K* charges for trial. The State asserted, and defense counsel did not dispute, that video surveillance captured Whiteside inside the Circle K, accessing merchandise located behind a restricted employees-only counter, when both burglaries were committed. This uncontroverted representation of the evidence satisfied both the clear and convincing admissibility threshold—that Whiteside committed both acts—and the relevance threshold—that the commission of each offense had a "tendency" to make a "fact of consequence" in determining culpability on the other charge "more or less probable than it would be without the evidence." Ariz. R. Evid. 401. Additionally, as found by the superior court, evidence material to each count was admissible for a proper purpose under Evidence Rule 404(b)—to establish knowledge, identity, or absence of mistake for the other charged crime. Finally, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Although the evidence may have undermined a potential defense of misidentification or mistake, it did not suggest the jurors should render a verdict on an improper basis. *See Mott*, 187 Ariz. at 545–46 (explaining "[n]ot all harmful evidence . . . is unfairly prejudicial" and only "evidence [that] has an undue tendency to suggest decision on an improper basis, such as emotion, sympathy, or horror" is inadmissible).

¶13 But even assuming error, Whiteside has failed to establish any prejudice from the consolidation of the *Circle K* burglary charges. "When a defendant challenges a denial of severance on appeal, he must demonstrate compelling prejudice against which the trial court was unable to protect." *See Goudeau*, 239 Ariz. at 446, ¶ 67 (citation modified). Although Whiteside makes a fleeting reference to joinder having "permitted inflammatory speculative evidence to be considered by the jury," he provides no meaningful argument to support this claim and fails to point to anything in the record suggesting the jury improperly considered evidence offered as proof for one offense as support he committed the other offense. ARCAP 13(a)(7) (requiring argument in briefing). Nor could he, because the superior court instructed the jury to consider each offense separately and advised that each count must be proven beyond a reasonable doubt. *State v. Allen*, 253 Ariz. 306, 334, ¶ 62 (2022) ("There is no prejudice from a denial of severance when a jury is instructed to consider each offense separately and advised that each must be proven beyond a reasonable doubt.") (citation modified). "We presume jurors follow the court's instructions." *Goudeau*, 239 Ariz. at 446, ¶ 67. Because the superior court properly instructed the jury to separately consider each offense and the burden of proof for each offense, any risk the jury would fail to separate the evidence

was mitigated. Therefore, on this record, Whiteside has failed to establish the superior court erred, much less committed fundamental, prejudicial error, by consolidating the *Circle K* charges for trial.

## II.     Number of Jurors

**¶14**        Whiteside argues the superior court improperly impaneled eight jurors, rather than twelve, for the *Walmart* and *Walgreens* trials. In framing this argument, Whiteside acknowledges he faced maximum sentences of only 15.5 and 15 years' imprisonment in the *Walmart* and *Walgreens* cases, respectively. But he contends the potential imposition of consecutive sentences in the *Walmart*, *Walgreens*, and *Circle K* cases—having been charged with a Class 4 felony in each indictment and alleged to have two or more historical prior felony convictions in each case—exposed him to a potential cumulative sentence of greater than 60 years' imprisonment, triggering the constitutional right to a twelve-person jury. *See* A.R.S. § 13-703(J) (establishing the maximum sentence for a Class 4 felony committed by a category three repetitive offender as 15 years' imprisonment).

**¶15**        Although the United States Supreme Court has held that a twelve-person jury "is not a necessary ingredient of 'trial by jury'" under the United States Constitution, *Williams v. Florida*, 399 U.S. 78, 86 (1970); *see also State v. Armendaris*, 259 Ariz. 454, 456-67, ¶¶ 13–20 (App. 2025) (rejecting claim that the United States Supreme Court "effectively overruled" *Williams* in *Ramos v. Louisiana*, 590 U.S. 83 (2020), noting *Ramos* "did not address jury size"), the Arizona Constitution requires a twelve-person jury "in criminal cases in which a sentence of death or imprisonment for thirty years or more is authorized by law." Ariz. Const. art. 2, § 23; *see also* A.R.S. § 21-102(A). In all other cases, "an eight-person jury is acceptable." *State v. Kuck*, 212 Ariz. 232, 233, ¶ 7 (App. 2006); A.R.S. § 21-102(B).

**¶16**        As a preliminary matter, the parties dispute whether Whiteside preserved this issue for appeal. In *Walmart*, Whiteside acquiesced to an eight-member jury, agreeing with the superior court's understanding that "30 years [wa]sn't an issue." Likewise, in *Walgreens*, Whiteside initially stipulated to an eight-member jury. But at a hearing held twenty days before trial, the superior court questioned whether twelve jurors were needed given the possibility of stacked sentences for the *Walmart*, *Circle K*, and *Walgreens* cases. The prosecutor responded that the court should consider only the potential maximum sentence "in each individual case" to determine the required number of jurors. Despite

stating, "I don't disagree with [the prosecutor's] analysis," defense counsel stated that, "given the potential risk, . . . just for the record, I would ask for the 12 jurors."

¶17        We review de novo whether a defendant's sentencing exposure entitled him to a twelve-person jury. *State v. Nguyen*, 208 Ariz. 316, 318, ¶ 6 (App. 2004). The improper denial of a twelve-person jury constitutes fundamental, prejudicial error. *State v. Maldonado*, 206 Ariz. 339, 342, ¶ 10 (App. 2003) ("Although [the defendant] stipulated to a lesser number of jurors, the improper denial of a twelve-person jury nonetheless is fundamental error.").

¶18        To determine the length of a defendant's potential sentence, we consider "the possible cumulative sentences in each case and not just the possible sentence for each count or charge." *State v. Henley*, 141 Ariz. 465, 468 (1984) (citation modified); *see also State v. Parker*, 22 Ariz. App. 111, 115 (1974) (explaining the Arizona Constitution requires a twelve-person jury when "the total possible authorized sentence in *a* criminal case" is 30 years or greater) (emphasis added). Stated differently, to assess whether a defendant's sentencing exposure triggers the constitutional right to a twelve-person jury, courts not only "take into account allegations of sentence enhancements," but also "whether the sentences could be imposed consecutively." *State v. Price*, 218 Ariz. 311, 314, ¶ 11 (App. 2008).

¶19        Because the superior court consolidated the *Walmart*, *Circle K*, and *Walgreens* cases for sentencing, Whiteside argues the sentencing calculus necessarily included the potential for stacked sentences in the *combined* cases. The State disagrees, but neither party cites a case directly on point.

¶20        *Nguyen* is instructive. In that case, the State charged the defendant with burglary and alleged he had two historical prior felony convictions. 208 Ariz. at 317–18, ¶¶ 2–3, 5. Under the sentencing scheme then in effect, the defendant faced a possible maximum sentence of twenty-five years' imprisonment—clearly under the constitutional threshold of a sentence of thirty years' imprisonment or greater. *Id.* at 318, ¶ 5. But "a finding of guilt on the case also invoke[d] a mandatory consecutive sentence in [an] unrelated case for which the defendant was on probation." *Id.* Because "the combined sentences for the two cases could exceed thirty years," the defendant argued the superior court erred by failing to impanel a twelve-person jury. *Id.* On review, this court determined the constitutional right to a twelve-person jury is triggered only when the maximum possible sentence—for the charges tried to that jury—is thirty

years' imprisonment or greater. *Id.* at ¶ 9. Reasoning that a potential sentence for the probation violation did not factor into the sentencing calculus because the probation violation "originate[d] from a criminal case that [was] separate and factually unrelated" to the burglary charge, this court affirmed the defendant's convictions and sentences. *Id.* at 318, 319, ¶¶ 9, 11 (citation modified).

**¶21** Applying this reasoning here, *Walmart* and *Walgreens* constituted distinct criminal cases, and the superior court needed only to consider the charges tried to the respective juries—and the corresponding maximum punishments—to determine whether Whiteside was entitled to a twelve-person jury in each case. To be clear, the potential imposition of consecutive sentences in factually unrelated cases does not factor into a sentencing calculus when determining whether a twelve-person jury is required in a particular criminal case; instead, the court considers only the potential maximum, cumulative sentence *for the charges tried to the particular jury. See Nguyen*, 208 Ariz. at 317, 318, ¶¶ 1, 9 ("The potential sentence for [a] previously adjudicated offense is not included when determining whether a twelve-person jury is required for the trial of [a] newly charged crime.").

**¶22** In this case, the superior court properly considered only the potential maximum sentence Whiteside faced in *Walmart* and *Walgreens*, separately, and correctly determined neither case exposed him to a potential sentence greater than 30 years' imprisonment. Therefore, the court properly impaneled a jury consisting of eight persons for both the *Walmart* and *Walgreens* cases.

### III.    Pretrial Delay

**¶23** Whiteside argues the superior court violated his right to a speedy trial by improperly granting the State a trial continuance in *Walgreens*.

**¶24** Police arrested Whiteside on March 6, 2024, after receiving a report he had entered a Walgreen's restricted employee area, taken merchandise, and left the store without paying. Following an evidentiary hearing, the superior court found Whiteside ineligible for release. The court then arraigned him on March 21, 2024, calculating the last day, for speedy trial purposes, as August 18, 2024.

**¶25** On April 8, 2024, appointed counsel for all Whiteside's cases moved "to align" the last day for the *Walmart* and *Circle K* cases with the last day for the *Walgreens* case, which the superior court granted. In June

2024, the court appointed new counsel, at Whiteside's request. New counsel then moved for a ninety-day continuance. Although Whiteside protested *any* delay, the court found extraordinary circumstances existed and granted a sixty-day continuance, setting a new last day of October 4, 2024. The superior court held the *Walmart* trial on September 18 and 19, 2024, and the *Circle K* trial on September 26 and October 1, 2024.

¶26　　　At a trial procedure conference held on October 2, 2024, the day before trial was scheduled to commence in the *Walgreens* case—the prosecutor notified the superior court that the State had been unable to locate a noticed witness—the store cashier present at the time of the alleged offense. Explaining the witness had since separated from her employment, the prosecutor said the State intended to call a store manager or "loss prevention person" instead. Given her alleged unavailability, defense counsel asked the superior court to find admissible the store clerk's statement to a responding police officer—captured on the officer's body camera—that she had given Whiteside permission to place his bags beside the Walgreens counter in the restricted employees-only area. The prosecutor objected, arguing defense counsel could not introduce the store clerk's statement through the body camera video and would instead need to subpoena the store clerk or elicit the purported out-of-court statement from Whiteside at trial. When asked about the State's efforts to locate and subpoena the store clerk, the prosecutor stated that the sheriff's office had attempted to locate her, to no avail, and he elected to proceed to trial without her rather than expend other "investigative resources." After hearing from both parties, the court took the matter under advisement.

¶27　　　The next morning, the trial started with jury selection. But shortly after noon, Whiteside moved to dismiss the case, asserting the unavailability of the only eyewitness to the alleged offense, the store clerk, deprived him of his constitutional right to confront his accuser. In support of his motion, Whiteside noted the State's "minimal efforts to procure the witness." The superior court then viewed the body camera video with counsel. As the court discussed the admissibility of the video, the prosecutor moved for a two-week continuance, requesting additional time to locate and serve a subpoena on the store clerk. Defense counsel suggested dismissal "may be more appropriate," but stated he did not "necessarily have grounds to object to a continuance" and affirmed that Whiteside wanted the store clerk to testify. In the absence of an objection, the court stated "[t]ime would be excluded." At that point, defense counsel objected to the requested continuance on speedy trial grounds. Based on both parties' representations, the court found the store clerk was a "key witness" and concluded that because the prosecutor did not know of the

inability to locate her until just days before trial, her absence was unforeseen and therefore extraordinary circumstances justified a continuance.

**¶28**       Although the State requested only a two-week continuance, the court excluded three weeks of time and set a new last day of October 25, 2024. Following the continuance, the *Walgreens* trial started on October 23, 2024—232 days after Whiteside's arrest (7 months, 18 days) and 217 days after his arraignment (7 months, 3 days).

**¶29**       Both the United States and Arizona Constitutions guarantee a criminal defendant the right to a speedy trial. U.S. Const. amend. VI; Ariz. Const. art. 2, § 24. But neither constitution "requires that a trial be held within a specified time period." *State v. Spreitz*, 190 Ariz. 129, 136 (1997); *see also State v. Parker*, 231 Ariz. 391, 398, ¶ 9 (2013) ("There is no bright line rule for how quickly a trial must occur."). Accordingly, when evaluating a defendant's claim that pretrial delay violated the constitutional right to a speedy trial, we consider four factors: "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the prejudice to the defendant." *Parker*, 231 Ariz. at 398, ¶ 9 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). In balancing these factors, "the length of the delay is the least important, while the prejudice to defendant is the most significant." *Spreitz*, 190 Ariz. at 139–40. We review de novo whether a delay has violated a defendant's constitutional right to a speedy trial. *See State v. Smith*, 215 Ariz. 221, 233, ¶¶ 56–57 (2007).

**¶30**       The first factor, the length of the delay, acts as a "gatekeeper." *Smith*, 215 Ariz. at 233, ¶ 59. "Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay, since, by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness." *Doggett v. United States*, 505 U.S. 647, 651–52 (1992) (citation modified). Absent a presumptively unreasonable delay, a court need not consider the remaining *Barker* factors. *See id.* at 652 n.1.

**¶31**       The United States Supreme Court has found a post-indictment delay approaching one year sufficient to trigger a full *Barker* analysis under the federal constitution. *Id.* (noting "courts have generally found" post-indictment delay "'presumptively prejudicial' . . . as it approaches one year"; "mark[ing] the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry"). The Arizona Supreme Court has found a pretrial delay of nine months sufficient to trigger further

examination under the state constitution, *State v. Soto*, 117 Ariz. 345, 348 (1977), and contemplated, without deciding, that a 7.5 months' delay may "require further examination," *State v. Zuck*, 134 Ariz. 509, 515 (1982). Because 7.5 months elapsed between Whiteside's arrest on the *Walgreens* charge and the start of the *Walgreens* trial, we consider the other *Barker* factors.

**¶32**        The second factor, reason for the delay, examines which party caused the delay. *See Vermont v. Brillon*, 556 U.S. 81, 90 (2009) (analyzing "whether the government or the criminal defendant is more to blame for the delay") (citation modified). Delay by the prosecution to gain an advantage "weighs heavily" against the prosecutor, but prosecutorial negligence weighs against the State to a lesser degree, and any "delay caused by the defense weighs against the defendant." *Id.*

**¶33**        In this case, both parties contributed to the delay. Whiteside does not dispute that his request for new counsel led to a sixty-day continuance and his unrelated conduct necessitated four days' trial in the *Walmart* and *Circle K* cases. Instead, he challenges only the three-week continuance granted to the State to secure a witness. Even assuming, without deciding, the State failed to exercise due diligence in locating and subpoenaing the store clerk before the October 4, 2024 last day, nothing suggests this delay constituted a deliberate attempt to gain advantage over the defense. On this record, the delay factor does not weigh in Whiteside's favor.

**¶34**        The third factor, the defendant's assertion of the right to a speedy trial, examines "the strength of his efforts" to invoke the right. *Barker*, 407 U.S. at 531 (citation modified); *see also State v. Schaaf*, 169 Ariz. 323, 327 (1991) (holding a defendant waives a speedy violation absent a prompt assertion of the right). Here, Whiteside timely raised his right to a speedy trial when the State requested a two-week continuance, so the third factor weighs in his favor.

**¶35**        The fourth, and most significant factor, is whether the delay prejudiced the defendant. *Soto*, 117 Ariz. at 348. Under the *Barker* analysis, cognizable prejudice primarily hinges on whether the delay impaired the defendant's ability to defend against the charges. *Parker*, 231 Ariz. at 399, ¶ 16. Thus, to prevail on this factor, a defendant must demonstrate that the delay subjected him to prolonged confinement, prevented him from fully investigating his case, resulted in the inability to secure evidence or witnesses, or otherwise hindered his defense. *See id.*

¶36 Here, Whiteside has not alleged any cognizable prejudice. He argues only that without the continuance, the State would have been compelled to proceed to trial with weaker evidence. The Arizona Supreme Court has made clear that even if true, "this is not the sort of prejudice required." *Zuck*, 134 Ariz. at 515. Rather, a defendant "must show that he was prejudiced by being prevented from presenting some defense, rather than by the state's being allowed to make its case." *Id.* Therefore, Whiteside has failed to establish any prejudice.

¶37 In sum, the State arguably failed to exercise due diligence in securing a key witness and Whiteside timely invoked his right to a speedy trial, but the delay was moderate and Whiteside suffered no resulting prejudice. Accordingly, on balance, the *Barker* factors do not weigh in Whiteside's favor. *See Parker*, 231 Ariz. at 399, ¶¶ 17–18 (holding a delay did not deprive a defendant of his speedy trial rights when he failed to show any prejudice). Therefore, Whiteside has failed to establish the three-week continuance deprived him of his constitutional right to a speedy trial.

¶38 Apart from constitutional protections, criminal defendants in Arizona have a procedural, rule-based right to a speedy trial. Under Rule 8, an in-custody defendant must be tried within 150 days of arraignment. Ariz. R. Crim. P. 8.2(a)(1). To determine whether a continuance complies with Rule 8's time limits, the court may exclude any delay (1) occasioned by or on behalf of the defendant, Ariz. R. Crim. P. 8.4(a)(1), or (2) compelled by "extraordinary circumstances" and "indispensable to the interests of justice," Ariz. R. Crim. P. 8.4(a)(5), 8.5(b).

¶39 As noted, 217 days elapsed between Whiteside's arraignment on the *Walgreens* charge and the start of the *Walgreens* trial. Whiteside does not contest the exclusion of either the sixty-day continuance requested by defense counsel or the four days of trial in the *Walmart* and *Circle K* cases. Subtracting only those 64 days, the *Walgreens* trial effectively started 153 days after Whiteside's arraignment. Accordingly, Whiteside argues that if the superior court improperly granted the State a three-week continuance, he was entitled to a dismissal of the case under Rule 8.6. ("If the court determines, after excluding any applicable time periods, that a time limit established by these rules has been violated, the court must dismiss the prosecution with or without prejudice.").

¶40 We review a superior court's Rule 8 trial continuance, over a defendant's objection, for a clear abuse of discretion and resulting prejudice. *State v. Lukezic*, 143 Ariz. 60, 68–69 (1984); *State v. Wassenaar*, 215 Ariz. 565, 571, ¶ 16 (App. 2007) ("A defendant who fails to establish that his

defense was prejudiced or that he was deprived of a fair trial has not established prejudice sufficient to warrant reversal of his conviction.") In so doing, we recognize the superior court is in the best position to evaluate whether "extraordinary circumstances" justify a continuance and whether "delay is indispensable to the interests of justice." *State v. Hein*, 138 Ariz. 360, 368 (1983) (citation modified). Among other things, "the unavailability of a key witness may constitute an extraordinary circumstance." *State v. Vasko*, 193 Ariz. 142, 144, ¶ 11 (App. 1998) (citation modified).

**¶41** The record reflects, and Whiteside does not dispute, that the prosecutor learned of the State's inability to locate the store clerk shortly before the October 4, 2024 last day. Upon determining the store clerk was not vital to the State's case, the prosecutor promptly told the court and defense counsel the State would call another victim representative to testify at trial in the store clerk's stead. In response, Whiteside argued the store clerk was an *essential* witness such that her absence from trial would violate his constitutionally-protected right to confront his accuser. Faced with Whiteside's invocation of the Confrontation Clause, the prosecutor moved for a continuance so he could locate the store clerk and serve her with a subpoena.

**¶42** On this record, the superior court reasonably found the store clerk was a key witness and therefore acted within its discretion to grant a three-week continuance so the State could secure the store clerk's testimony for trial. Excluding the nineteen-day delay from October 4, 2024 until the start of trial on October 23, 2024, only 134 days effectively elapsed from Whiteside's arraignment on the *Walgreens* charge to the start of the *Walgreens* trial. Therefore, Whiteside has failed to establish a Rule 8 violation.

## IV. Sufficiency of the Evidence

**¶43** Arguing insufficient evidence supports the burglary conviction in the *Walgreens* case, Whiteside contends the superior court erroneously denied his motion for judgment of acquittal.

**¶44** At trial, the prosecutor first called the store clerk to testify. At the outset, the store clerk explained that Walgreens has a policy forbidding customers from stepping "behind the counter" to access cigarette cartons stocked inside glass-enclosed shelving. Instead, upon request, Walgreens employees retrieve cigarette cartons for customers who produce identification demonstrating they are of legal age to purchase. On the day in question, March 6, 2024, the store clerk saw Whiteside enter the

13

Walgreens carrying bags and invited him to place his belongings beside the restricted-area counter while he shopped. About ten minutes later, the store clerk saw Whiteside step behind the counter, slide open the glass shield of the shelf containing cigarette cartons, remove several cigarette cartons and place them inside a bag. When the store clerk told Whiteside he needed to pay for the merchandise, he denied taking anything and left the store. At that point, the store clerk called the police to report the theft.

¶45        During the store clerk's testimony, the prosecutor played a surveillance video (admitted as a trial exhibit) that captured Whiteside's actions inside the Walgreens. While viewing the video, the store clerk noted when Whiteside moved "beyond the barrier" to "where the cigarettes are." She denied having given him permission "to come that far behind the counter." On cross-examination, the store clerk testified that the store had no signage at the counter stating the area was restricted.

¶46        Next, the prosecutor called a police sergeant who, after receiving a dispatch report of the Walgreens suspect's description, spotted Whiteside at a neighboring Circle K. After placing Whiteside under arrest, the sergeant walked to the nearby Walgreens and viewed the surveillance video, which he testified clearly captured Whiteside as he moved around the counter—"closed on both ends" with "a sign instructing employees only"—and took several cartons of cigarettes.

¶47        After the State's presentation of evidence, Whiteside moved for judgment of acquittal pursuant to Rule 20. Pointing to the store clerk's testimony that she authorized Whiteside to place his bags beside the restricted counter, defense counsel argued the State had failed to prove the requisite element of trespass. The superior court summarily denied the motion.

¶48        We review de novo a superior court's ruling on a Rule 20 motion. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at ¶ 16 (citation modified). In reviewing the sufficiency of the evidence, we test the evidence "against the statutorily required elements of the offense," *State v. Pena*, 209 Ariz. 503, 505, ¶ 8 (App. 2005), and neither reweigh conflicting evidence nor assess the credibility of witnesses, *State v. Buccheri-Bianca*, 233 Ariz. 324, 334, ¶ 38 (App. 2013). Sufficient evidence upon which a reasonable jury can convict may be direct or circumstantial, *West*, 226 Ariz. at 562, ¶ 16, and a

judgment of acquittal is appropriate only "if there is no substantial evidence to support a conviction." Ariz. R. Crim. P. 20(a).

¶49    As charged in this case, a person commits burglary in the third degree by entering or remaining unlawfully in a nonresidential structure "with the intent to commit any theft or felony therein." A.R.S. § 13-1506(A)(1). "'Enter or remain unlawfully' means an act of a person who enters or remains on premises when the person's intent for so entering or remaining is not licensed, authorized or otherwise privileged except when the entry is to commit theft of merchandise displayed for sale during normal business hours, when the premises are open to the public and when the person does not enter any unauthorized areas of the premises." A.R.S. § 13-1501(2). Reading these statutes together, a person who enters or remains in a store during normal business hours with the intent to commit theft does not commit burglary in the third degree unless the person enters an unauthorized area of the premises.

¶50    Viewed in its entirety, the State presented substantial evidence from which a reasonable jury could find Whiteside committed burglary in the third degree. Although the store clerk acknowledged permitting Whiteside to place his bags beside the restricted counter, she denied authorizing him to move behind the counter. Equally important, the store clerk testified that Whiteside moved beyond a "barrier" to position himself behind the counter and the sergeant likewise described the counter as "closed on both ends." While the store clerk and sergeant provided conflicting testimony concerning the presence of signage warning customers that the area behind the counter was restricted to employees, a reasonable juror could have concluded that Whiteside knowingly entered a restricted area when he not only sidestepped a "barrier" to position himself behind the counter but also *opened* glass-enclosed shelving to access the cigarette cartons. Therefore, the superior court did not err by denying Whiteside's motion for judgment of acquittal.

**CONCLUSION**

¶51    For the foregoing reasons, we affirm.

